IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INNO360, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 13-1790-SLR |
| ZAKTA, LLC, | ) ) ) | |
| Defendant. | ) ) | |

Jarret P. Hitchings, Esquire of Duane Morris LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Sandra A. Jeskie, Esquire of Duane Morris LLP.

Steven K. Kortanek of Womble Carlyle Sandridge & Rice, LLP. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: June 19, 2014
Wilmington, Delaware

[signature]
ROBINSON, District Judge

## I. INTRODUCTION

On October 31, 2013, inno360, Inc. ("plaintiff") filed the present action against Zakta, LLC ("defendant"). (D.I. 1) Plaintiff alleges eight causes of action: (1) trade dress infringement under 15 U.S.C. § 1125(a); (2) unfair competition under 15 U.S.C. § 1125(a); (3) common law unfair competition; (4) deceptive trade practices under the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531 *et seq.*; (5) misappropriation and misuse of confidential trade secret information, without authorization, under the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001 *et seq.*; (6) breach of contract; (7) tortious interference with a contract; and (8) tortious interference with a business relationship. (D.I. 1 at ¶¶ 67, 76, 82, 86, 94, 101, 106, 112) Plaintiff further seeks declaratory relief pursuant to 28 U.S.C. § 2201 that: (1) no royalties are due for 2013 and beyond; (2) the license agreement has been terminated, not renewed and/or cancelled; and (3) plaintiff may terminate the license agreement without cause. (*Id.* at ¶¶ 118, 125, 131) Presently before the court is defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the United States District Court for the Southern District of Ohio (Western Division at Cincinnati), and plaintiff's request for jurisdictional discovery. (D.I. 5; D.I. 8 at 12)

The court has jurisdiction pursuant to 15 U.S.C. § 1121 as well as 28 U.S.C. §§ 1332 and 1367(a). For the reasons that follow, the court transfers this action to the United States District Court for the Southern District of Ohio. Plaintiff's request for jurisdictional discovery is denied.

## II. BACKGROUND

### A. The Parties

Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its place of business in Stamford, Connecticut. (D.I. 1 at ¶ 2) Plaintiff develops and distributes a cloud-based innovation management platform to leading research and development groups around the world. (*Id.*) Among other features, plaintiff's platform enables users to conduct complex searches and organize them using a proprietary visualization layout. (*Id.*)

Defendant is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio. (*Id.* at ¶ 3) Defendant owns and develops technologies related to collaborative search, semantics, search-based digital curation, and social networking. (*Id.*)

### B. The Underlying Facts

On May 25, 2011, the parties entered into a Software OEM License Agreement ("the Agreement") (D.I. 1, ex. A), whereby plaintiff paid defendant for certain projects related to integrating defendant's licensed software into plaintiff's existing technology platform. (D.I. 1 at ¶¶ 18–21) Plaintiff agreed to pay defendant a royalty based on total revenues received from its customers for use of the licensed software as incorporated into plaintiff's application. (*Id.* at ¶ 22) The Agreement was to commence on May 17, 2011 and remain in effect until canceled in writing by either party. (*Id.* at ¶ 23)

On October 21, 2012, plaintiff allegedly removed all of defendant's code from its technology platform, and has not since included any of the licensed software in the

2

platform accessed by its customers. (*Id.* at ¶ 30–31) On November 30, 2012, plaintiff notified defendant in a letter that the licensed software had been removed from its technology platform, and that it was terminating the Agreement. (*Id.* at ¶ 32; D.I. 7, ex. C) The termination letter indicated that plaintiff wished to discuss both a payment plan for royalties which had accrued during 2012 and a structure for the parties to continue working together on projects. (D.I. 7, ex. C) The parties thereafter entered into a payment agreement by which plaintiff was to pay defendant certain outstanding royalties which had accrued in 2012. (D.I. 1 at ¶ 35) Plaintiff made the final payment in October 2013. (*Id.* at ¶ 36)

Defendant offers web-based search engine services to internet users for free and as part of a paid subscription service. (D.I. 8 at 3–4) Plaintiff alleges that defendant's website contains plaintiff's intellectual property, which defendant obtained while working for plaintiff under a nondisclosure and confidentiality agreement. (*See* D.I. 1 at ¶ 44) Plaintiff asserts jurisdiction is proper because defendant's website is accessible to anyone, including Delaware residents, regardless of location. (D.I. 8 at 7)

## III. STANDARD OF REVIEW

### A. Personal Jurisdiction

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional

3

defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

To establish personal jurisdiction, a plaintiff must produce facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional. *See id.* at 66; *Reach & Assocs. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003). With respect to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long-arm statute. *See Reach & Assocs.*, 269 F. Supp. 2d at 502. The constitutional basis requires the court to determine whether the exercise of jurisdiction comports with the defendant's right to due process. *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Pursuant to the relevant portions of Delaware's long-arm statute, 10 Del. C. § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State

> by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

10 Del. C. § 3104(c)(1)-(4) (emphasis added). With the exception of (c)(4), the long-arm statute requires a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354, 355 (D. Del. 2008). Subsection (4) confers general jurisdiction, which requires a greater number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

If defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process, to wit, whether plaintiff has demonstrated that defendant "purposefully avail[ed] itself of the privilege of conducting activities **within the forum State**," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted) (emphasis added). For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum State. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). For the court to exercise general personal jurisdiction consistent with due process, plaintiff's cause of action can be unrelated to defendant's activities in the forum State, so long as defendant has "continuous and systematic contacts with the forum state." *Applied*

*Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470 (D. Del. 1991).

## IV. DISCUSSION

### A. Personal Jurisdiction

Plaintiff alleges that defendant's Delaware contacts are sufficient for this court to exercise personal jurisdiction over defendant. Plaintiff is first tasked with demonstrating "a statutory basis for jurisdiction under [Delaware's] long-arm statute." *Boston Scientific Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp. 2d 358, 364 (D. Del. 2009). Plaintiff asserts three bases for personal jurisdiction under subsections (c)(1)–(4) of Delaware's long-arm statute: (1) defendant's transaction of business in Delaware; (2) defendant's tortious conduct in Delaware due to defendant's alleged use of plaintiff's intellectual property through defendant's website; and (3) the interactive nature of defendant's website in Delaware. (*See* D.I. 1 at ¶ 6; D.I. 8 at 2)

#### 1. Specific Jurisdiction

Plaintiff claims that defendant is subject to jurisdiction under subsections (c)(1) and (2) of the long-arm statute because defendant has transacted, and continues to transact, business in Delaware through its website. (D.I. 8 at 7) Defendant is not incorporated or organized under Delaware law, maintains no office or other place of business in Delaware, is not licensed to do business in Delaware, has no employees, representatives or agents in Delaware, and does not produce, market, or sell any products or services or otherwise transact any business in Delaware. (D.I. 7 at ¶¶ 3, 5–20, 23) The only "contacts" between defendant and the forum state of Delaware stem from the existence of defendant's website, which can be accessed by anyone,

including residents of and businesses in Delaware.

Specific jurisdiction arises when a defendant has both purposefully directed its activities at residents of the forum state and the action arises from, or is directly related to, the defendant's action within the forum state. See Burger King, 471 U.S. at 472. The Third Circuit Court of Appeals uses a "purposeful availment" test for deciding whether a defendant's internet website meets the Burger King test for specific jurisdiction. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003). When a defendant's website is specifically designed to commercially interact with residents of a forum state, specific jurisdiction is proper because that defendant has "purposefully availed" itself of doing business with the forum state. Id. "The mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." Id. at 454. "Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by **directly targeting** its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient or other related contacts." Id. (emphasis added). In the present case, the court finds no evidence that defendant "purposefully availed" itself of doing business with Delaware citizens.

Plaintiff argues that defendant promotes itself as "a personal and social [w]eb search engine" that enables users of its applications to "[a]cess [c]ontent from [a]nywhere," including Delaware. (D.I. 8 at 3) Defendant was aware that its website could be accessed in Delaware, and certainly could have foreseen that Delaware residents would use its internet search services, either for free or as part of a paid

7

subscription service. This foreseeability, however, does not mean that defendant purposefully directed its activities at residents of Delaware or "purposefully availed" itself of the privilege of doing business in Delaware. *See World Wide Volkswagen*, 444 U.S. at 295 (holding that, while an automobile retailer and wholesaler certainly foresaw the possibility that one of their vehicles could enter any other state and potentially become involved in an accident, a forum state with which the retailer had no prior contact could not exercise personal jurisdiction over the wholesaler). Here, as in *World-Wide Volkswagen*, defendant did not purposefully avail itself of doing business with residents of Delaware merely because it knew its website could be accessed by residents of any state, including those in Delaware. Courts within the Third Circuit have traditionally required "something more" from defendants other than the knowledge that their website could be viewed or that their product could be used in a forum state before considering whether specific jurisdiction is proper. *See Kloth v. Christian University*, 494 F. Supp. 2d 273, 279–80 (D. Del. 2007) (finding that a university did not purposefully avail itself of doing business within Delaware by using a website that advertised its "distance learning" program without "something more") (citations omitted).

Plaintiff cites to *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1125–28 (W.D. Pa. 1997), for the proposition that defendant's website is commercially "active" enough in Delaware to subject defendant to jurisdiction in the forum. In *Zippo*, the court found "something more" where the defendant had sold passwords to approximately three thousand subscribers from the forum state of Pennsylvania and had contracted with internet service providers to "furnish its services to their customers

8

in Pennsylvania." *Id.*; *see also Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1261 (6th Cir. 1996) (finding "something more" where the defendant had sold software to twelve Ohio residents, advertised his software on the plaintiff's computer system, and transmitted thirty-two software files to the plaintiff in Ohio). Plaintiff states that defendant distributes its zResearch product over the internet as part of a thirty-day free trial. (D.I. 8 at 9) Once the free trial is over, the user must pay defendant to continue receiving the zResearch search services. (*Id.*) However, unlike the forum-directed internet sales, contracts, and file transmissions in *Zippo* and *Compuserve*, plaintiff has not provided any evidence to show that Delaware residents have in fact paid for defendant's search services or that defendant has targeted its search services at Delaware through directed marketing or otherwise. (*See* D.I. 8 at 4; D.I. 7 at 9) Instead, plaintiff has merely concluded that, because defendant has not excluded Delaware from accessing its website, it has subjected itself to the jurisdiction of the Delaware courts. (*See* D.I. 8 at 4, 9) This argument is not persuasive. Defendant's website "contacts" with Delaware are insufficient to establish that defendant has "purposefully availed" itself of the Delaware forum, thereby warranting personal jurisdiction under either subsection (c)(1) or (2) of the long-arm statute.[1, 2]

---

[1] In the alternative, plaintiff cites *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1332–34 (E.D. Mo. 1996) (cited in *Zippo*), for the proposition that jurisdiction is proper because defendant's website is at minimum an interactive, if not an active, website available in Delaware. Unlike in *Maritz*, where plaintiff presented evidence that the defendant had transmitted information into Missouri regarding its services 131 times, plaintiff has not provided any evidence to show that Delaware residents have actually utilized defendant's website. *See id.* at 1333.

[2] Plaintiff also asserts jurisdiction is proper under subsection (c)(3) because defendant's website, which allegedly contains plaintiff's intellectual property, can be

9

Plaintiff further argues that defendant subjected itself to Delaware jurisdiction by knowingly signing a software license agreement with a Delaware corporation. (D.I. 8 at 8) However, plaintiff has failed to identify any facts supporting personal jurisdiction under the Delaware long-arm statute. *See Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 546–47 (D. Del. 2012) (declining to accept plaintiff's jurisdictional allegations because plaintiff had not asserted reasonable particular factual allegations indicating that any part of defendant's business dealings with its fifty-one Delaware clients ever occurred in Delaware). While plaintiff is incorporated in Delaware, plaintiff has failed to show that any part of its business relationship with defendant occurred in Delaware or even involved Delaware. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (holding that subsection (c)(2) of the Delaware long-arm statute requires that service contracts must be for services performed in Delaware); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. at 1468 (holding that subsection (c)(1) of the long-arm statute "requires that some act must have actually occurred in Delaware").

To the contrary, all of the contacts relevant to the license agreement at issue are located in Ohio, where the agreement was negotiated, executed, and performed. (D.I.

---

viewed within Delaware. An interactive website supports a finding of personal jurisdiction pursuant to subsection (c)(3) of the long-arm statute where there is "evidence indicating that the website operator intentionally aim[ed] the website at the forum state or knowingly conducts business with forum residents via the website." *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, Civ. No. 09-022, 2009 WL 5184350 (D. Del. Dec. 23, 2009) *report and recommendation adopted as modified*, Civ. No. 09-22, 2010 WL 133762 (D. Del. Mar. 31, 2010). Here, again, plaintiff has offered no evidence to show that defendant has aimed its website at Delaware or conducted any business with Delaware residents through its website.

7 at ¶ 25) The license agreement itself was to be governed by Ohio law. (*Id.*, ex. A at 16) Plaintiff maintains no office in Delaware, and instead operated out of its Cincinnati, Ohio office for all activities pertaining to the license agreement. (D.I. 6 at 12; D.I. 8 at 3) The mere fact that plaintiff is incorporated in Delaware, while all other contacts pertaining to the agreement between the parties are centered in Ohio, is insufficient to establish specific personal jurisdiction over defendant under the long-arm statute. *See Dippold-Harmon Enters., Inc. v. Lowe's Cos., Inc.*, Civ. No. 01-532, 2001 WL 1414868, at *3 (D. Del. Nov. 13, 2001).

### 2. General Jurisdiction

Plaintiff asserts that jurisdiction is proper under subsection (c)(4) of the long-arm statute because defendant's internet-based search applications have caused tortious injury to plaintiff in Delaware. (*See* D.I. 8 at 7) General jurisdiction may be exercised over a defendant whose contacts with the forum state are "continuous and substantial." *See Merck v. Barr*, 179 F. Supp. 2d 368, 374 (D. Del. 2002). The standard for contacts with a forum state to be considered "continuous and substantial" is a "high standard in practice." *See Dencer*, 269 F. Supp. 2d at 505; *see also Shoemaker*, 556 F. Supp. 2d at 355. Typically, for the court to consider general jurisdiction, the defendant must be engaged in extensive, longstanding business in the forum state, such as marketing or shipping products, performing services, or maintaining one or more offices within the forum; less extensive activities will not suffice for general personal jurisdiction. *See generally* 4 Fed. Prac. & Proc. Civ. 3d § 1067.5, n. 6 (collection of cases from multiple jurisdictions demonstrating the high threshold that must be met before general

jurisdiction is considered).

Here, plaintiff has offered no evidence that defendant has a "continuous and substantial" relationship with Delaware. Plaintiff has merely attached "screenshots" of defendant's website to show that defendant's customers could access defendant's website in Delaware without providing evidence that they necessarily do. (D.I. 8 at 3; exs. 1–9) Additionally, plaintiff does not dispute that defendant's business activities are centered in Ohio. (D.I. 6 at 12; see D.I. 8 at 7) Because defendant maintains no other contacts with Delaware, its passive internet contacts are insufficient to warrant general personal jurisdiction under subsection (c)(4) of the Delaware long-arm statute. Because the court has no specific or general jurisdiction over defendant, the Delaware long-arm statute cannot lawfully be used to obtain personal jurisdiction.[3]

## B. Jurisdictional Discovery

Plaintiff claims jurisdictional discovery is appropriate because the "screenshots" of defendant's website show that defendant's activities support personal jurisdiction. (D.I. 8 at 13; exs. 1–9) However, jurisdictional discovery is only appropriate "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us*, 318 F.3d at 456. In the present case, the only factual allegations offered by plaintiff in support of jurisdictional discovery are the above-mentioned "screenshots" of defendant's website to show that Delaware residents could, along with the rest of the

---

[3]In light of the present analysis, the court need not consider whether the exercise of personal jurisdiction would be consistent with the defendant's constitutional right to due process.

internet-using world, access defendant's website. (D.I. 8 at 3; exs. 1–9) Such evidence is insufficient to support a request for jurisdictional discovery. *See Registered Agents*, 880 F. Supp. 2d at 547–48 (denying plaintiff's request to conduct jurisdictional discovery because plaintiff "only point[ed] to defendant's Delaware accessible website" and "two solicitous letters defendant sent to [the plaintiff] in Delaware" as the "factual allegations" supporting its request). To grant a request for a period of jurisdictional discovery under such circumstances would be to allow plaintiff to "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Id.* at 548 (quoting *Eurofins Pharma*, 623 F.3d at 157). Therefore, the court declines to allow jurisdictional discovery.

### C. Transfer of Venue

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In light of the court's analysis above, and because defendant neither resides in Delaware nor did a substantial part of the events giving rise to the claim occur in Delaware, venue is inappropriate in this court. *See* 28 U.S.C. § 1391. In lieu of dismissal of this claim, and in the interest of justice, the court transfers this action to the United States District Court for the Southern District of Ohio.[4] As discussed above, all contacts relevant to

---

[4]Defendant moves in the alternative to transfer this case to the Southern District of Ohio under 28 U.S.C. § 1404(a). (D.I. 5) As venue is improper in this district, § 1404(a) is not the correct statute to be applied to the present situation. The court does find transfer to be appropriate and, therefore, exercises its power to "sua sponte cure jurisdictional and venue defects by transferring [this] suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631," in the interest of justice. *See Forest Labs,*

the dispute between the parties are located in Ohio, where the Agreement was negotiated, executed, and performed.[5] (D.I. 7 at ¶ 25) Importantly, the Agreement provides that Ohio law governs disputes thereunder (*Id.*, ex. A at 16), and plaintiff does not contest that Ohio is an appropriate venue. (*See* D.I. 8 at 13–16) The District Court for the Southern District of Ohio is familiar with the application of Ohio law and has an interest in deciding the parties' controversy under that law. The court finds, therefore, that the interests of justice are satisfied by the transfer of the instant case to Ohio.

## V. CONCLUSION

For the reasons discussed above, plaintiff's request for jurisdictional discovery is denied. The court transfers the case at bar to the United States District Court for the Southern District of Ohio. An appropriate order shall issue.

---

*Inc. v. Cobalt Labs, Inc.*, Civ. No. 08-21, 2009 WL 605745, at *12 n.9 (D. Del. Mar. 9, 2009) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006) and *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002)).

[5]Plaintiff acknowledges that it used an Ohio office for purposes of the Agreement. (D.I. 8 at 3)